# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NIKITA DILLARD,** | : | CIVIL ACTION NO. 1:18-CV-70 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **SEAN CORNICK, individually** | : | |
| **and in his official capacity, and the** | : | |
| **HARRISBURG POLICE BUREAU,** | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Nikita Dillard ("Dillard") commenced this civil rights litigation raising false arrest, false imprisonment, and malicious prosecution claims under the United States Constitution and Pennsylvania Constitution, as well as claims of municipal liability pursuant to <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). Defendants move to dismiss Dillard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. Factual Background and Procedural History

On August 6, 2016, defendant Sean Cornick ("Cornick"), then employed by defendant Harrisburg Police Bureau and the City of Harrisburg, executed a search warrant at 1824 Forster Street in Harrisburg, Pennsylvania. (<u>See</u> Doc. 3 ¶¶ 2, 5).[1] Dillard was a guest in the home and was asleep in the basement at the time of the

---

[1] The complaint docketed with defendant's notice of removal is missing page 9. Accordingly, we will cite to the full version of the complaint included with the county court record submitted by the Dauphin County Court of Common Pleas. (<u>See</u> Doc. 3 at 9-20).

search. (Id. ¶ 6). According to Dillard, Cornick encountered him in the basement and "commanded" that he identify which of the home's occupants possessed the firearm that officers had discovered. (Id. ¶ 7). Cornick advised Dillard that he would be charged with possession of the firearm if he did not cooperate. (Id. ¶ 8). Dillard informed Cornick that he "had no idea what had happened upstairs while he was sleeping in the basement." (Id. ¶ 9).

Cornick arrested Dillard and several other occupants of the home.[2] (See id. ¶ 10). Cornick stated in an affidavit of probable cause that law enforcement discovered a stolen revolver from the state of New York in the home, as well as "a fully automatic assault rifle 5.56 mm located in the basement [Dillard] slept in."[3] (Doc. 4-4 at 3; see also Doc. 3 ¶ 10). The affidavit of probable cause states in full:

> On 8/6/16 The Dauphin County Crisis Response Team executed a Search Warrant at 1824 Forster Street, this is reference Quazil Garland 8/10/91 who is wanted out of Altoona PA for Terroristic Threats from an incident that occurred and this is based on videos/words via text that

---

[2] The complaint indicates in paragraph 10 that Cornick arrested Dillard on August 6, 2017. (Id. ¶ 10). Elsewhere in the complaint, Dillard avers that the search occurred on August 6, 2016 and that the case was nolle prossed in February 2017. (Id. ¶¶ 5, 18). Accordingly, we assume that the August 2017 arrest date supplied in paragraph 10 is a typographical error and that the arrest occurred in August 2016.

[3] Dillard indicates in his complaint that the affidavit of probable cause is attached thereto as Exhibit A. (See id.) Dillard did not submit any exhibits with his complaint, nor is the affidavit included as part of the county court record transmitted to this court by the Dauphin County Court of Common Pleas. (See Docs. 1-1, 3). Defendants, however, have included the affidavit of probable cause with their motion to dismiss. (See Doc. 4-4). Because the affidavit is relied on in Dillard's complaint and its authenticity is undisputed, the court may properly consider the affidavit at the Rule 12(b)(6) stage. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

2

> he was going to shoot and or kill persons involved in the threats.
>
> Located in the home was Garland, also Darryn Corbett 11/16/75 and Nikita Dillard 1/21/78. There was a juvenile male and a 19 year old woman with a 1 week old child.
>
> Located during search was drug paraphernalia in the living room area where Garland stated he slept, this would be inside a table by couch and also behind the sofa.
>
> Located a Stolen 38 Caliber Revolver from the State of NY, this was located in the kitchen area loaded.
>
> Located in the basement area was a[] Full Assault Rifle 5.56 mm, Stag Arms with a magazine but no bullets, in the basement is where Dillard stays, he is from New Jersey. Also in basement was drug paraphernalia from a digital scale to marijuana smoking devices.
>
> Located several bullets for a 22 caliber and also a 12 gauge shotgun shell, this was located in the kitchen area.
>
> Corbett and Dillard are Former Felons . . . not to be in possession of any firearms. Garland has an active PFA on his person out of Blair County and in the PFA it states that Garland is not to possess firearms.
>
> Garland Dillard and Corbett will be charged with persons not possess firearms and receiving stolen property and drug paraphernalia. Corbett will also be charged with possession of small amount of marijuana, when executing search warrant located marijuana in his pocket.

(Doc. 4-4 at 5). According to Dillard, Cornick lied about an assault rifle being located in the basement of the home. (See Doc. 3 ¶ 11).

Dillard was charged under Pennsylvania law with two counts of possession of a firearm by a felon, one count of conspiracy for possession of a prohibited firearm, one count of use or possession of drug paraphernalia, and one count of receiving stolen property. See Commonwealth v. Dillard, No. CP-22-CR-0005444-2016 (Pa. Ct.

3

Com. Pl. 2016)[4]; (see also Doc. 4-4 at 3-4). Dillard alleges that bail was initially set and remained at $200,000 "[d]ue to the serious nature of the charges" and because the affidavit led the judge to believe Dillard had possessed a machine gun. (Doc. 3 ¶¶ 12-13).

Dillard alleges that Pennsylvania State Police investigated and determined that "there was no machine gun." (Id. ¶ 15). The charges against Dillard were nolle prossed on February 14, 2017, by which time Dillard had spent approximately five months in jail. (Id. ¶¶ 16-17). Dillard notes that, at around the same time, Cornick was criminally charged in this court with conversion of federal funds and theft from a program receiving federal funds for conduct that occurred in October 2016. (See id. ¶¶ 19-20, 54-55); see also United States v. Cornick, No. 1:17-CR-273, Docs. 1, 30, 31 (M.D. Pa.).

Dillard commenced this lawsuit in the Dauphin County Court of Common Pleas on December 11, 2017. Defendants timely removed the matter to this court. Dillard asserts three counts against Cornick in his individual and official capacity, to wit: in Count 1, a claim for unreasonable seizure in violation of Article I, Section 8 of the Pennsylvania Constitution, and in Counts 2 and 3, respectively, claims for false arrest and imprisonment and malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Dillard also asserts

---

[4] Docket sheets are matters of public record which the court may properly consider in ruling on a Rule 12(b)(6) motion. Belichick, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196); Zedonis v. Lynch, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) (same).

4

a Monell claim in Count 4 against the Harrisburg Police Bureau for failure to train and discipline Cornick. Defendants move to dismiss all counts of the complaint.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Belichick, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting

5

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  Discussion

Cornick and the Harrisburg Police Bureau raise a number of challenges to Dillard's pleading.  We address Dillard's claims against each defendant *seriatim*, beginning with the state constitutional claim against Cornick.

#### A.  State Law Claim Against Cornick

Dillard asserts a state law claim against Cornick for violation of Article I, Section 8 of the Pennsylvania Constitution.  Neither Pennsylvania's General Assembly nor its courts recognize a private cause for damages under the state constitution.  Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2006) (nonprecedential) (quoting Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); O'Donnell v. Cumberland County, 195 F. Supp. 3d 724, 730-31 (M.D. Pa. 2016) (collecting cases).  Dillard concedes that monetary damages are not available under the Pennsylvania Constitution.  (Doc. 15 at 8).  Equitable remedies remain available to redress state constitutional violations,

6

see Pocono Mountain, 442 F. App'x at 688 (quoting Moeller v. Bradford County, 444 F. Supp. 2d 316, 320-21 (M.D. Pa. 2006); Jones, 890 A.2d at 1216), but Dillard does not seek equitable relief. Hence, we will dismiss Count 1 of Dillard's complaint with prejudice.

### B. Federal Claims Against Cornick

Dillard asserts claims against Cornick for false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish Section 1983 liability, plaintiffs must prove a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Cornick invokes the affirmative defense of qualified immunity in response to Dillard's constitutional claims. Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed that the challenged conduct was in compliance with settled law. See id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials

7

with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally shields "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether that right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. Pearson, 555 U.S. at 236. We begin and end our inquiry with the first.

The sum and substance of Dillard's claims is that Cornick lacked probable cause to arrest him on August 6, 2016. Lack of probable cause is a common element for each of Dillard's claims. A false arrest claim tasks the plaintiff to show that he or she was arrested without probable cause. Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). A claim for false imprisonment is grounded most often in a "detention pursuant to [an] arrest" made without probable cause. Groman v. Township of Manalapan, 47

8

F.3d 628, 636 (3d Cir. 1995); see also Stewart v. Moll, 717 F. Supp. 2d 454, 463 (E.D. Pa. 2010). And a malicious prosecution claim requires a plaintiff to show, *inter alia*, that the defendant initiated and pursued a criminal proceeding without probable cause. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

To prevail on his false arrest and false imprisonment claims, Dillard must establish that Cornick arrested him without probable cause to believe he committed "any offense that could be charged under the circumstances." Id. at 84-85 (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Probable cause to arrest exists when the facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. See Beck v. Ohio, 379 U.S. 89, 91 (1964); Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (citation omitted). Probable cause is an objective assessment; the arresting officer's subjective intentions are irrelevant. See Estate of Smith, 318 F.3d at 514 (citing Whren v. United States, 517 U.S. 806, 813 (1996)). Our inquiry is not whether the individual committed the crime for which he was arrested, but whether the officer had probable cause to believe so at the time of the arrest. Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005); Groman, 47 F.3d at 634-35.

We recognize that the question of probable cause in Section 1983 claims is "necessarily fact-intensive" and will generally be reserved for the jury. Dempsey, 834 F.3d at 468; Estate of Smith, 318 F.3d at 514 (citation omitted). But in this case, as to the false arrest and false imprisonment claims, the pleading is deficient on its face. Dillard offers what he himself characterizes as a "blanket denial" of probable

9

cause. (Doc. 15 at 5). He bases this denial on the singular allegation that "[t]here was no gun located in the basement and [Cornick] knowingly and falsely swore to the Magisterial District Justice." (Doc. 3 ¶ 11). This allegation is notable for what it lacks—Dillard does not deny the balance of the facts stated in Cornick's affidavit of probable cause, *viz.*, that a loaded handgun was found in the home's kitchen and that drug paraphernalia were found throughout the home, including a digital scale and marijuana smoking devices in the basement where Dillard slept. (See generally Doc. 3; see Doc. 4-4 at 5). Nor does Dillard claim that these facts were fabricated.[5] (See generally Doc. 3).

Taking Dillard's allegations as true and excising the purportedly fabricated statement regarding the assault rifle, Cornick's affidavit nonetheless contains sufficient facts to convince a reasonable person that Dillard committed multiple offenses—specifically, possession of drug paraphernalia, possession of a handgun by a convicted felon, and receipt of stolen property. As stated *supra*, it is not enough that Dillard disputes probable cause as to a single charged count; Dillard must show that he was arrested without probable cause as to "*any offense* that could be charged under the circumstances." Johnson, 477 F.3d at 85 (emphasis added) (quoting Barna, 42 F.3d at 819). In other words, "the existence of probable

---

[5] Dillard attempts to bolster this pleading deficiency with explanations and speculation in his brief opposing defendants' Rule 12 motion. (See Doc. 15 at 5). Dillard cannot amend his pleading through briefing in opposition to a motion to dismiss. Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing Commw. of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). To the extent Dillard possesses facts which would undermine probable cause as to all charges brought against him, Dillard may include those facts in the amended pleading which will be authorized by the court.

cause for one offense justifies the arrest—and defeats the plaintiff's claim of false arrest—even if there was insufficient cause to arrest on the second offense alone." Id. (alterations omitted) (quoting Edwards v. City of Philadelphia, 860 F.2d 568, 576 (3d Cir. 1988)). We will grant defendants' motion to dismiss Dillard's false arrest and false imprisonment claim.

We reach a contrary result as to the malicious prosecution claim. Police officers may be liable for malicious prosecution when they "conceal [from] or misrepresent material facts" to a judge or prosecutor. See Thomas v. City of Philadelphia, 290 F. Supp. 371, 379 (E.D. Pa. 2018) (quoting Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014)). The Third Circuit Court of Appeals has observed that, unlike claims of false arrest and false imprisonment, prosecution of unfounded charges "almost surely will place an additional burden on the defendant." Johnson, 477 F.3d at 83. Thus, when assessing a malicious prosecution claim based on more than one charge, a court must separately examine whether pursuit of *each charge* was supported by probable cause. Dempsey, 834 F.3d at 477 (citing Johnson, 477 F.3d at 83); Johnson, 477 F.3d at 84-85 (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991)).

For the reasons articulated *supra*, we find that Cornick had probable cause to arrest Dillard and pursue charges against him for unlawfully possessing a handgun, receiving stolen property, and use or possession of drug paraphernalia. However, Dillard avers that Cornick knowingly fabricated the affidavit of probable cause as pertains the assault rifle charge. Dillard alleges that Cornick knew there was no assault rifle in the basement but nonetheless stated that a "Full Auto Assault Rifle

11

5.56 mm, Stag Arms" was "[l]ocated in the basement area . . . where Dillard stays." (See Doc. 3 ¶¶ 11, 13; see also Doc. 4-4 at 5). Dillard also alleges that it was this charge that dictated his high bail and resulted in his imprisonment for five months. (Doc. 3 ¶¶ 12-13, 17). Dillard has adequately pled for purposes of Rule 12(b)(6) that Cornick pursued the assault rifle charge without probable cause. Because the right to be free from prosecution without probable cause is clearly established, Andrews v. Sculli, 853 F.3d 690, 705 (3d Cir. 2017) (citing Donahue v. Gavin, 280 F.3d 371, 380 (3d Cir. 2002)), we will deny Cornick's request for qualified immunity on Count 3 and thus deny his motion to dismiss same.

### C. Federal Claims Against Harrisburg Police Bureau

Dillard asserts a claim for municipal liability directly against the "Harrisburg Police Bureau" in Count 4. We note that Dillard also asserts Counts 2 and 3 against the Harrisburg Police Bureau indirectly, by naming Cornick in those counts in his individual *and* his official capacity. Courts construe official capacity claims against a municipal employee as if they were brought against the governmental entity itself. Brandon v. Holt, 469 U.S. 464, 471-72 n.21 (1985); McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir. 2005) (citations omitted).

The fatal deficiency with each of Dillard's Monell claims is that the "Harrisburg Police Bureau" is not a "person" subject to suit under Section 1983. Terrell v. City of Harrisburg Police Dep't, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008) (collecting cases). Dillard has failed to identify the proper municipal entity—the City of Harrisburg—as a defendant. See id. Consequently, we are compelled to dismiss Count 4 against the Harrisburg Police Bureau and Counts 2 and 3 to the

extent they state claims against Cornick in his official capacity as an employee of the Harrisburg Police Bureau.[6]

### D. Leave to Amend

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Although we harbor doubts regarding Dillard's ability to cure the deficiencies identified in his complaint, we will grant Dillard leave to amend the federal claims dismissed herein.

---

[6] We do not reach the merits of Dillard's Monell claim. We nonetheless note for Dillard's benefit—in the event he chooses to amend his pleading to identify the proper defendant—that Count 4 as currently pled would not survive Rule 12(b)(6) scrutiny. A municipality may only be held liable under Section 1983 if the plaintiff establishes that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish municipal liability in two ways: policy or custom. Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007); Santiago, 629 F.3d at 135. The Third Circuit has explained that, to prove liability, the plaintiff must show that the municipal policy or custom was itself unconstitutional, or was the "moving force" behind the alleged deprivation. Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). As presently constituted, Dillard's cursory allegations lack any factual support and fall well short of establishing an unconstitutional municipal policy or custom.

## IV. Conclusion

The court will grant in part and deny in part defendants' motion (Doc. 4) to dismiss. An appropriate order shall issue.

                                         /S/ CHRISTOPHER C. CONNER
                                         Christopher C. Conner, Chief Judge
                                         United States District Court
                                         Middle District of Pennsylvania

Dated:     September 28, 2018